[789 NYS2d 139]

In the Matter of George Rizzo, Respondent, v New York State Division of Housing and Community Renewal, Appellant.

First Department, February 8, 2005

APPEARANCES OF COUNSEL

*Marcia P. Hirsch,* New York City (*Gary Turk* of counsel), for appellant.

*Linda Rzesniowiecki,* New York City, for respondent.

**OPINION OF THE COURT**

TOM, J.P.

At issue on this appeal is the propriety of an order remanding the matter to respondent Division of Housing and Community Renewal (DHCR) for reconsideration of facts that arose subsequent to the agency's issuance of a final determination and over five years after the landlord filed her petition for hardship relief under the Sound Housing Act (L 1974, ch 1022, as amended by L 1975, ch 360, codified at NY City Rent and Rehabilitation Law [Administrative Code of City of NY] § 26-408 [b] [5]). Judicial review of an administrative determination is properly limited to the factual record adduced before the agency. Furthermore, DHCR's assessment of the building's rate of return for the year in which the landlord's petition for hardship relief was filed constitutes a reasonable interpretation of the statute it administers. Finally, DHCR's determination is supported by substantial evidence, and its order should not be disturbed.

The material facts are uncontroverted. In 1981, Rachel Crespin (the landlord) purchased a four-story townhouse located at 323 East 53rd Street in Manhattan, where she occupies an unregulated unit on the second floor. Each of the building's four apartments contains approximately 1,200 square feet and consists of an entire story. This controversy involves two rent-controlled units, one comprising the third floor, occupied solely by petitioner George Rizzo, and the other comprising the fourth floor, formerly occupied by Elaine Bloedow.*

In 1996, pursuant to the New York City Rent and Rehabilitation Law, the landlord filed a hardship application (Rent and Rehabilitation Law § 26-408 [b] [5]), seeking to subdivide the third- and fourth-floor apartments, evict the respective tenants from the front portion of their units and combine the vacated front rooms to form a new duplex apartment. Petitioner Rizzo

---

* The first-floor apartment, which is also an unregulated unit, is not germane to this dispute.

filed a response challenging his partial eviction from his unit. In order to obtain the necessary certificate authorizing the alterations, the landlord was required to demonstrate the inability of the building to generate a minimal return without the proposed remodeling. In accordance with regulations promulgated by DHCR pursuant to the Sound Housing Act (NY City Rent and Eviction Regulations [9 NYCRR] § 2204.4):

> "(g) No application for a certificate of eviction shall be granted under section[ ] 2204.7 . . . of this Part, unless the administrator determines, after a hearing, that:

> "(1) there is no reasonable possibility that the landlord can make a net annual return of $8^{1/2}$ percent of the assessed valuation of the subject property without recourse to the eviction sought; and

> "(2) neither the landlord nor immediate predecessor in interest has intentionally or willfully managed the property to impair the landlord's ability to earn such return."

Following an audit of the building's income and expenses during the 1996 calendar year, a hearing was conducted before an Administrative Law Judge (ALJ), who concluded, "there is no reasonable possibility that the landlord can make a net annual return of 8.5 percent of the assessed valuation of the subject property without recourse to the eviction sought under Section 2204.7 of the Rent and Eviction Regulations." The ALJ found that the building had not been willfully managed to impair its operating return. He found assertions that the landlord lacked the financial ability to effectuate the planned alterations and that she merely desired to sell the building to be outside the scope of the hearing. By way of an order dated September 18, 2000, the agency's Rent Administrator granted the relief sought, rejecting "bare allegations" of the landlord's bad faith and petitioner's contention that his apartment lacked the requisite six rooms to qualify for subdivision under the regulations. The order noted that the original certificate of occupancy indicates that the apartment contained six rooms and that a physical inspection of the premises supported the landlord's assertion that Mr. Rizzo had illegally removed the wall between the living and dining areas. He therefore concluded that the apartment was underoccupied within the meaning of Rent and Eviction Regulations (9 NYCRR) § 2204.7 (a).

Petitioner filed a petition for administrative review (PAR), which was denied by DHCR's Deputy Commissioner on January

2, 2002. Petitioner commenced this CPLR article 78 proceeding in March 2002, advancing the same arguments rejected by DHCR in the course of its administrative proceedings. In the interim, the tenant of the other unit affected by the creation of the proposed duplex apartment, Elaine Bloedow, died, apparently the day after DHCR issued its final determination of the PAR.

In deciding the article 78 proceeding, Supreme Court did not reach any of the arguments raised by petitioner but sua sponte remanded the matter to the agency for further proceedings. The court reasoned that the vacancy decontrol of Ms. Bloedow's unit occasioned by her passing "must be considered by the DHCR in determining the owner's ability to meet the $8^{1}/_{2}\%$ return requirements of the Sound Housing Act." The court's decision construed Ms. Bloedow's demise as "new evidence which could not have been offered at the time of the DHCR's determination" and held that remittitur was warranted because "the validity of the certificate of eviction has not yet been 'finally determined by the courts' " (quoting *Matter of McMurray v New York State Div. of Hous. & Community Renewal*, 72 NY2d 1022, 1024 [1988] [pendency of judicial proceedings does not impair protected status afforded by tenant's attainment of 20 years' occupancy of rent-controlled apartment where certificate of eviction has not yet issued]).

As a general principle, a reviewing court is bound by the record evidence (*see Fehlhaber Corp. v State of New York*, 65 AD2d 119, 131 [1978], *lv denied* 48 NY2d 604 [1979]), whether contained in a judicial record or an administrative return. As this Court stated in *Matter of 72A Realty Assoc. v New York City Envtl. Control Bd.* (275 AD2d 284, 286 [2000]):

> "Judicial review of the propriety of an administrative determination is limited to those grounds invoked by the agency in its determination (*Matter of Montauk Improvement v Proccacino*, 41 NY2d 913; *see also, Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758-759), and 'the court may not consider arguments or evidence not contained in the administrative record' (*Brusco v New York State Div. of Hous. & Community Renewal*, 170 AD2d 184, 185, *appeal dismissed* 77 NY2d 939, citing *Matter of Rozmae Realty v State Div. of Hous. & Community Renewal*, 160 AD2d 343, *lv denied* 76 NY2d 712; *Matter of Fanelli*

*v New York City Conciliation & Appeals Bd.*, 90 AD2d 756, 757, *affd* 58 NY2d 952)."

Judicial review of administrative determinations affecting rent-controlled properties is limited by statute. No objection to an administrative determination, "and no evidence in support of any objection thereto, shall be considered by the court, unless such objection shall have been presented to the city rent agency by the petitioner in the proceedings resulting in the determination or unless such evidence shall be contained in the return" (Rent and Rehabilitation Law § 26-411 [a] [2]). The statute provides that either party may make application to the court "for leave to introduce additional evidence which was either offered and not admitted or which could not reasonably have been offered or included in such proceedings before the city rent agency." Notably, the record before us is devoid of any such application by petitioner. Rather, the issue was raised by the hearing court during oral argument, and DHCR thereafter sent a letter to the court indicating its opposition to remittance on the ground that "the death of Elaine Bloedow occurred after issuance of DHCR's final PAR order."

In view of the strict prohibition against judicial consideration of evidence not contained in the administrative record (*see Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 150 [2002], *revg* 290 AD2d 280 [2002]; *Matter of Rozmae Realty*, 160 AD2d at 343), the explicit statutory procedure must be deemed the exclusive means of bringing further evidence before the agency. In the absence of the necessary application, the court's sua sponte assessment of extrinsic facts exceeded the scope of permissible judicial review (*cf. Matter of McMurray*, 72 NY2d at 1024 [statute "expressly authorizes the reviewing court to consider new evidence when requested to do so by the agency"]).

In any event, the court's reasoning that remand is necessary to permit the agency to reconsider its determination in light of new evidence is flawed. While it is axiomatic that the death of Ms. Bloedow is not a "fact" that could have been presented to the administrative agency at any time prior to the issuance of its final determination, it is equally apparent that her passing, in 2002, has no bearing on DHCR's evaluation of the profitability of the subject building during the test year of 1996. Thus, it does not constitute newly discovered evidence, that is, factual material which, though extant, was neither known nor reasonably discoverable at the time of the proceedings before the

agency. Rather, the court's order, in effect, directs the agency to render a decision de novo based upon the occurrence of a subsequent, extraneous event. By its language, the order contemplates an assessment of the current rate of return on the building to determine if it will exceed the 8½% limit of Rent and Rehabilitation Law § 26-408 (b) (5) following the deregulation of Ms. Bloedow's apartment as the result of her death.

Nothing in the statute suggests that the city rent agency is obliged to redetermine the profit margin of a building every time there is a change in occupancy. *Matter of McMurray* (72 NY2d 1022, *supra*), seized upon by the hearing court, does not support this proposition. In that case, involving a proceeding to recover rent-controlled premises for the landlord's personal use pursuant to Rent and Eviction Regulations (9 NYCRR) § 2204.5, the Court of Appeals merely stated that the pendency of an appeal did not impair the statutory protection against eviction extended to a tenant in one of three protected categories specified in Rent and Rehabilitation Law § 26-408 (b) (1): 62 years of age or older, a tenant of the building for 20 years or more or an occupant afflicted by a documented medical impairment. The Court held (at 1024) that the tenant's accumulation of 20 years' occupancy entitled him to statutory protection from eviction, without any toll due to the pendency of judicial proceedings.

The matter at bar is readily distinguishable. This Court has held that the protection extended by the statute to members of the three protected categories is limited to applications seeking eviction for the purpose of recovering rent-controlled apartments for the personal use of the landlord or the landlord's immediate family (*Matter of Ziman v New York State Div. of Hous. & Community Renewal*, 153 AD2d 489 [1989], *affd* 76 NY2d 727 [1990]). In *Ziman,* we explicitly held (at 490-491) that even where the landlord's intent to occupy the premises for personal use is apparent, a certificate of eviction is nevertheless available on the independent ground that the premises will not reasonably generate an 8½% rate of return. Therefore, where, as here, an application for a certificate is predicated on an inadequate return on assessed valuation, the age, health and duration of occupancy of the affected tenant are not material, and *Matter of McMurray* is inapposite. Finally, there is no intimation, either in *McMurray* or any other case brought to this Court's attention, that DHCR is required to perform more than a single assessment of a building's capacity to generate the specified minimum rate of return.

Although the merits of petitioner's objections to DHCR's determination were not reached by Supreme Court, they are contested on appeal. Petitioner contends that the agency's determination was arbitrary and capricious. DHCR maintains that the methodology employed in assessing the building's rate of return was proper and that the questions involved—including the number of rooms in petitioner's apartment, the value of the landlord's apartment, and the allocation of expenses among the landlord, the landlord's business and the building—were all matters within the agency's particular expertise.

As noted, the practical effect of the court's decision to remit for reconsideration of facts which occurred subsequent to the agency's final determination is to order a de novo review. This would have to be based on a new test year, since it would be fundamentally unfair to allow Rizzo to present evidence of Bloedow's death in 2002 without allowing the landlord an opportunity to show the changes in her circumstances in response to the new evidence. Thus, the admission of subsequent events which occurred after the final agency order would defeat finality and could subject an otherwise final order to endless recurring review.

The agency's determination is supported by substantial evidence. The value assigned to the landlord's apartment and imputed to her as income took into account the conflicting appraisals of the parties' expert witnesses, mortgage expenses were properly included in the building's expenses (*Matter of Lopez v New York State Div. of Hous. & Community Renewal*, 208 AD2d 842 [1994]) and, in view of the standard 6% management fee prevailing in the industry, the landlord was reasonably credited with a management fee of 5%. The documentary evidence together with the landlord's unrefuted affidavit convincingly supports the finding that petitioner's apartment contained at least six rooms prior to his unauthorized removal of a wall. Conversely, the allegations of bad faith asserted against the landlord are unsupported by probative evidence. Even crediting petitioner's contention that the landlord planned to sell the building, such sale would be subject to the planned alteration upon which the certificate was granted. Nor was the agency required to conduct a separate hearing devoted to this issue.

As to the alleged deprivation of petitioner's right to use the premises to earn income as a commercial artist, this provision was incorporated into a 1959 lease that expired over 30 years ago. The record contains no evidence that petitioner, who was

74 years old at the time he filed his answer to the landlord's hardship application, currently earned any income from such endeavors. The agency determined that the proposed alterations to the apartment would leave petitioner with 493 square feet of space, noting that he was granted a substantial rent adjustment, from a previous monthly rental of $673.64 to $301.55. Thus, petitioner has failed to establish the lack of a rational basis for DHCR's conclusion that the subject apartment was underoccupied.

In the absence of any legislative expression of the time period for which a building's rate of return is to be assessed, DHCR's practice of calculating the return on assessed valuation for the year in which a hardship application is filed is within the exercise of its discretion. It is settled that an agency's interpretation of the operational practices attendant to the statute that it administers is entitled to deference (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459 [1980]; *see also Matter of Dworman v New York State Div. of Hous. & Community Renewal,* 94 NY2d 359, 371 [1999]). In conclusion, the agency's factual findings are supported by substantial evidence and are not arbitrary or capricious. Therefore, its determination must be upheld (*Matter of Salvati v Eimicke,* 72 NY2d 784, 791-792 [1988]).

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Marilyn Shafer, J.), entered October 17, 2002, which remanded the matter to respondent to consider new evidence, should be reversed, on the law, without costs, and the petition dismissed.

NARDELLI, J. (dissenting). I respectfully dissent and find that the judgment of the Supreme Court, which granted the petition and remitted the matter to DHCR for reconsideration of the owner's application in light of new evidence, should be affirmed.

Rachel Crespin is the owner of a four-story townhouse designated as 323 East 53rd Street, New York, New York. The building is comprised of four apartments, one on each floor. Ms. Crespin, who became the building's first rent-controlled tenant in 1959, currently resides in the unregulated second-floor apartment, having purchased the building in 1981. Petitioner George Rizzo resides in the rent-controlled apartment on the third floor, and Elaine Bloedow, now deceased, resided in the rent-controlled apartment on the fourth floor. The first-floor apartment, which is not germane to this proceeding, is also unregulated. Respondent New York State Division of Housing and

Community Renewal (DHCR) is the regulatory agency charged with the responsibility of administering the rent stabilization and rent control laws (*see* Omnibus Housing Act [L 1983, ch 403]; *Matter of Rent Stabilization Assn. of N.Y. City v New York State Div. of Hous. & Community Renewal*, 252 AD2d 111, 113 [1998]).

The owner, on or about November 1, 1996, filed two applications with DHCR, pursuant to New York City Rent and Eviction Regulations (9 NYCRR) § 2204.7, for permission to subdivide the two rent-controlled apartments, and evict the existing tenants from the front half of their apartments, in order to create an additional duplex apartment in the building.

Rizzo filed an answer with DHCR on November 26, 1996, asserting that: the owner failed to plead or prove compliance with the Sound Housing Act; the owner did not submit the application in good faith since she did not establish the financial ability to perform the alterations and has, instead, been trying to sell the building; the apartment consists of only five rooms, whereas in order for section 2204.7 to apply, the apartment must have at least six rooms, exclusive of the kitchen; and the requisite alteration and demolition plans were not submitted with the owner's application. In a supplemental answer dated February 28, 1997, Rizzo maintained that his apartment was partially used for commercial purposes, which was reflected in an annexed copy of his original lease, dated December 18, 1959, and that as a result, there could be "no under-occupancy of the apartment because a portion of the apartment had been decontrolled for the past 37 years."

DHCR conducted an inspection of Rizzo's apartment on February 4, 1998, which revealed that the front room and the second room from the front were used for commercial purposes, and that the rear room was used for commercial purposes and for sleeping. The inspector reported that a wall had been removed between the hall and the living room, that the apartment was occupied by one person, and that the "commercial rooms" were used as an artist's studio.

DHCR, on February 20, 1998, forwarded a "Request for Additional Information/Evidence" to the owner, which noted that a physical inspection of the apartment verified Rizzo's assertion that there were five rooms in the apartment, and not the six required by regulation for the purposes of the application. The owner, in response, submitted an affidavit, dated March 4, 1998, in which she explained that prior to purchasing the building,

she had been a tenant therein and personally observed Rizzo illegally remove the wall between the living and dining areas in 1960.[1] The owner, in support thereof, submitted a Buildings Department card indicating the apartment had six rooms, and a Finance Department record showing the apartment had seven rooms.

Rizzo, having retained counsel, asserted, inter alia, that the owner's application must fail under the standards set forth in the Sound Housing Act, which require that in order to obtain a certificate of eviction to conduct the proposed alterations, the owner must demonstrate that there is no reasonable possibility of earning an $8^1/_2\%$ return on the building's current assessment. Rizzo questioned both the income and expense figures provided by the owner, and noted again that his apartment was less than six rooms, one third of which were used commercially, and that the owner did not have the financial capability to complete the project. The owner responded that the construction necessary to create the duplex apartment was minimal, and in conjunction therewith, submitted an architect's proposal, as well as the New York City Buildings Department plans. Rizzo thereafter submitted a statement from an architect, who concluded:

> "In summary, it is my experience that the total cost of duplexing of two apartments at a modest level, where no kitchen or bathroom installation was involved, will run from $50,000 to $80,000. Thus, I do believe that [the owner's architect's] statement of projected cost is, based on my experience, unrealistically low."

The Rent Administrator (RA) assigned to this matter subsequently conducted a Sound Housing Act audit of the building's income and expenses for the year 1996 and determined that the owner did not receive an $8^1/_2\%$ net annual return on the assessed value of the building in that year. The RA then referred the matter to an Administrative Law Judge (ALJ), who conducted a hearing regarding the requirements of the Sound Housing Act. The ALJ heard testimony, and received evidence, from both tenants, the owner and their expert witnesses.

The ALJ, in a detailed report dated May 26, 2000, concluded that:

---

1. Ms. Bloedow, in her answer, acknowledged that she had modified her apartment from seven rooms to five rooms.

"[T]here is no reasonable possibility that the landlord can make a net annual return of 8½% of the assessed valuation of the subject property without recourse to the eviction sought under Section 2204.7 of the Rent and Eviction Regulations. I further find that neither the landlord nor her immediate predecessor in interest has intentionally or willfully managed the property to impair the landlord's ability to earn such return. She has consistently applied for and received cyclical MBR increases for both rent controlled apartments and has rented the unregulated first floor apartment for the entire year at a market rent. On the other hand, the tenants have not submitted any persuasive probative evidence to the contrary. The tenants' arguments as to the owner's bad faith relate to her financial ability to effectuate the planned alterations and to her alleged desire to sell the building, both of which are beyond the scope of this hearing."

The RA, by order dated September 18, 2000, granted the owner's application and rejected the tenants' assertion that the application was not made in good faith, finding that the tenants failed to "submit any persuasive or probative evidence to substantiate their bare allegations." The RA further noted that the original certificate of occupancy indicated that Rizzo's apartment contained six rooms, and found that the apartment had been altered, by the removal of a wall, so as to create a larger room. In addition, given the size of the apartment and the fact it was only occupied by one individual, the RA found that it was underoccupied as required to obtain the certificate of eviction sought pursuant to section 2204.7.

The RA directed Rizzo to surrender the "front half" of his apartment, excluding the kitchen and bathroom, and concomitantly reduced his rent by one half to $336.82, and then further reduced it to $301.55, in view of the rent increase granted in 1960 for the partial commercial use of the apartment. Ms. Bloedow was likewise directed to surrender the front half of her apartment, and her rent was reduced by one half.

Rizzo[2] thereafter filed a petition for administrative review (PAR) on October 24, 2000, arguing, inter alia, that: the RA improperly determined the issue of good faith without a hearing, even though he had demonstrated that the owner had no

---

2. Bloedow also filed a petition for administrative review.

intention of undertaking the alterations and had placed the building on the market; the actual cost of the duplex project would be 250% to 800% higher than the owner's estimate; the RA erred with respect to the number of rooms in Rizzo's apartment; the RA's determination essentially extinguished Rizzo's ability to work as a commercial artist, without due process; his rent was calculated incorrectly; and the ALJ's determination was incorrect as a matter of law, as well as arbitrary and capricious.

The owner, in contrast, asserted, inter alia, that: the tenants provided no evidence to raise an issue regarding her good faith, and any prospective sale of the building did not signify bad faith; she never expressed an interest to occupy the proposed duplex apartment; Rizzo failed to proffer any evidence whatsoever that he earned income as an artist; and the 1960 order permitting the prior landlord a rent increase for partial professional use did not decontrol that portion of the apartment as alleged, and if it had, there would be no limit to the rent that could be charged.

The DHCR Deputy Commissioner (Commissioner), by a decision and order issued January 2, 2002, denied the PAR and affirmed the RA's order. The Commissioner found that the ALJ's determination that the owner could not realize an $8\frac{1}{2}\%$ profit was based "on a reasonable analysis of the available data and in accordance with applicable law." The Commissioner further rejected Rizzo's contention that a portion of his apartment was decontrolled, relying on the regulations applicable at the time and, in any event, the Commissioner noted that the apartment must be treated as regulated until DHCR issues an order to the contrary. With regard to the number of rooms in the apartment, the Commissioner, referring to the original registration for the apartment filed with the United States Office of Price Administration, concluded that the apartment was subject to section 2204.7 since it had at least six rooms on March 15, 1951, the date the regulations were amended to require that number of rooms.

Additionally, the Commissioner perceived no indicia of bad faith arising out of the owner's simultaneous filing of the application and her efforts to sell the building, as there would be no resulting prejudice to the tenants, the new owners having the same duties and obligations as the current owner. Lastly, the Commissioner discounted Rizzo's claim that he had been denied due process, or of his ability to utilize a portion of his

apartment for professional purposes, reasoning, essentially, that he would simply have a smaller area in which to work.

Ms. Bloedow died, without a successor, apparently on the same day the Commissioner issued his decision, which resulted in the vacancy decontrol of her apartment.

Rizzo subsequently commenced this CPLR article 78 proceeding by the service of a notice of petition and petition dated March 1, 2000. Rizzo challenged the Commissioner's order as arbitrary and capricious and contrary to law and, in support thereof, essentially echoed the arguments made before the RA and the Commissioner. Rizzo also noted in his submissions that Ms. Bloedow was deceased, but he did not interpose that fact as a basis for modification or reversal.

Supreme Court, in a decision and judgment (denominated an order) entered on October 17, 2002, granted the petition to the extent of remitting the matter to DHCR, pursuant to New York City Rent and Rehabilitation Law (Administrative Code of City of NY) § 26-411 (a) (2), for consideration of new evidence which could not have been offered at the time of DHCR's determination, that evidence consisting of Ms. Bloedow's death. Supreme Court reasoned that "[t]he impact of the recent deregulation of Ms. Bloedow's apartment must be considered by the DHCR in determining the owner's ability to meet the 8½% return requirements of the Sound Housing Act." I would affirm Supreme Court.

Administrative Code § 26-411 (a) (2) provides, in pertinent part:

> "If application is made to the court by either party for leave to introduce additional evidence which was either offered and not admitted *or which could not reasonably have been offered or included in such proceedings* before the city rent agency, and the court determines that such evidence should be admitted, the court shall order the evidence to be presented to the city rent agency. The city rent agency shall properly receive the same . . ." (emphasis added).

There can be no dispute that Ms. Bloedow's death, and the subsequent decontrol of her apartment, "could not reasonably have been offered" at the proceedings before DHCR. The question before this Court, however, is whether Supreme Court properly directed the admission of that evidence, or whether, as

DHCR contends, any review of its determination to grant the owner's application for partial eviction should be limited to the facts on record for the "test year" on which the Sound Housing Act audit was conducted.

Administrative Code § 26-408 governs a building owner's right to evict tenants protected by the New York City rent control laws, and section 26-408 (a) delineates the seven grounds under which tenants may be evicted "for cause" (Administrative Code § 26-408 [a] [1]-[7]; see Sohn v Calderon, 78 NY2d 755, 764 [1991]). Section 26-408 (b) sets forth other circumstances under which an owner may regain possession of rent-controlled units, including: the "immediate and compelling necessity for his or her own personal use and occupancy" (Administrative Code § 26-408 [b] [1]); where the unit has been sublet (Administrative Code § 26-408 [b] [2]); and "for the immediate purpose of" substantially altering or remodeling a housing accommodation or demolishing it for the purpose of constructing a new building (Administrative Code § 26-408 [b] [3], [4]). Section 26-408 (b) requires the owner to obtain a certificate of eviction from DHCR, which the agency "shall issue . . . in accordance with its rules and regulations." All of the paragraphs incorporated in section 26-408 (b) specifically require that the owner act in good faith.

The Legislature enacted the Sound Housing Act in 1974 (L 1974, ch 1022, as amended by L 1975, ch 360, codified at Administrative Code § 26-408 [b] [5]), in order to add the requirement that an owner seeking to evict a tenant under paragraph (3) or (4) of section 26-408 (b) must demonstrate that there is no "reasonable possibility" that it can earn an $8^{1}/_{2}\%$ net annual return on the assessed value of the property without substantial alteration or demolition and development. The Sound Housing Act provides, in pertinent part:

"(a) no application for a certificate of eviction under paragraph three or four of this subdivision and no application for a certificate of eviction under paragraph one of subdivision j or under subdivision c of this section for the purpose of withdrawing a housing accommodation from the housing market on the grounds that the continued operation of such housing accommodation would impose undue hardship upon the landlord, *pending or made on or after the effective date hereof* shall be granted by the city rent agency unless the city rent agency finds that

there is no reasonable possibility that the landlord can make a net annual return of eight and one-half per centum of the assessed value of the subject property . . . and

"(b) *the effectiveness of any certificate of eviction or of any order granting a certificate of eviction pursuant to paragraphs three and four of this subdivision shall be suspended, and no tenant may be evicted* pursuant to any such certificate or order, unless the city rent agency:

"(i) finds that there is no reasonable possibility that the landlord can make a net annual return of eight and one-half per centum of the assessed value of the subject property without recourse to the remedy provided in said paragraphs three and four and finds that neither the landlord nor his or her immediate predecessor in interest has intentionally or willfully managed the property to impair the landlord's ability to earn such return; and

"(ii) issues an order reinstating the effectiveness of any certificate of eviction suspended pursuant to this paragraph. *The pendency of any judicial proceeding or appeal shall in no way prevent the taking effect of the relief granted in this subparagraph*" (emphasis added).

The intent of the Legislature in enacting the Sound Housing Act is clear, as evidenced in the memorandum of New York State Senator Roy Goodman, a sponsor of the bill:

"This bill prevents the processing of applications for certificates of eviction for demolition and alteration *and to suspend the effectiveness of those already granted until a finding is made that without certificates of eviction for demolition or alteration there is no reasonable possibility that the landlord can make a fair return.*

"Throughout New York City, particularly in Manhattan, thousands of units of rent controlled housing at rents people of moderate means can afford are being destroyed. . . . Housing of the type being lost can no longer be built in this city. Even subsidized housing comes in at rentals far beyond the means of working people of moderate means. Nor are they

eligible for what little public housing is being built in New York.

"As a result, stable communities are being destroyed and working people who have contributed so much to New York's greatness are being forced to leave. The housing being destroyed also houses many of the City's elderly people whose only income is a social security check" (1974 NY Legis Ann, at 210 [emphasis added]).

The Budget Report on Bills, included in the Governor's Bill Jacket (L 1974, ch 1022), opines that "[t]his bill may prevent unwarranted evictions, resulting in more protection for tenants, and firmer ground for legitimate rebuilding efforts by landlords."

It is well established that rent control and eviction laws are remedial in nature, designed to promote the public good, and "are to be liberally construed to carry out the reform intended and to spread their beneficial results as widely as possible" (*Matter of Legra v Division of Hous. & Community Renewal of State of N.Y.*, 194 AD2d 677, 679 [1993]; *Braschi v Stahl Assoc. Co.*, 74 NY2d 201, 208 [1989]; *see also Matter of McMurray v New York State Div. of Hous. & Community Renewal*, 135 AD2d 235, 239 [1988], *affd* 72 NY2d 1022 [1988] ["provisions affording protections to tenants are to be liberally construed as implementing the purposes for which the rent laws were enacted while provisions excluding a tenant from possession were to be strictly construed as running counter to the purpose of the rent laws"]).

In determining the latitude which should be afforded the application of the Sound Housing Act under the changing circumstances presented herein, I find this Court's decision in *Matter of McMurray v New York State Div. of Hous. & Community Renewal* (135 AD2d 235, *supra*) to be instructive. In *McMurray*, the landlord filed an application for a certificate of eviction, pursuant to Administrative Code § Y51-6.0 (b) (1) (now § 26-408 [b] [1]), to recover a rent-controlled unit for his own personal use and occupancy. The landlord's original application was denied for failure to provide an immediate and compelling necessity, but that ruling was reversed on administrative appeal upon the Deputy Commissioner for Rent Control's finding that because the building contained less than 13 units, the immediate and compelling necessity requirement was inapplicable. The matter was then remanded for a ruling on the issue of whether the landlord's application was made in good faith.

The District Rent Director thereafter granted the certification of eviction and the tenant filed an administrative appeal. While the proceeding was on remand, chapter 234 of the Laws of 1984 was enacted, inter alia, exempting tenants who had resided in a housing accommodation for 20 years or more from eviction. The Deputy Commissioner, however, rejected the tenant's claim of exemption, finding, inter alia, that he had not resided in the apartment for the requisite 20-year period. The tenant then commenced an article 78 proceeding challenging the issuance of the certificate of eviction, which petition was dismissed by the hearing court. Subsequent to the entry of that judgment, the tenant accumulated the requisite 20 years of occupancy to qualify him for protection from eviction and this Court reversed the Supreme Court, granted the petition and vacated the certificate of eviction. The Court of Appeals affirmed.

This Court, in *McMurray*, noted that the statute therein was remedial in nature, that provisions affording protections to tenants were to be liberally construed, and that the language of the statute, which applies "to any tenant in possession at or after the time [the act] takes effect," makes it clear that the Legislature intended the 20-year rule to be applied whenever a tenant in possession reaches that 20-year milestone.

In the matter at bar, we are, likewise, addressing a statute which is remedial in nature, which applies to any application for a certificate of eviction "pending or made on or after the effective date hereof" (Administrative Code § 26-408 [b] [5] [a]), and which suspends certificates of eviction already issued until it can be shown that there is no reasonable possibility that the landlord can realize the requisite net annual return. Moreover, the statute provides that "[t]he pendency of any judicial proceeding or appeal shall in no way prevent the taking effect" of such a suspension (Administrative Code § 26-408 [b] [5] [b] [ii]).

Given the liberal interpretation the courts are to afford this provision, coupled with the fact that the provision itself provides for the suspension, and review, of certificates of eviction already issued through the end of the judicial process, I find that despite DHCR's prior ruling in the owner's favor, we cannot ignore such a substantial change in the nature of the building, which, in essence, consists of the loss of 50% of the rent-controlled apartments therein. Clearly, restricting the scope of DHCR's review to a financial schematic which, plainly, no longer exists,

would inure not to the benefit of the tenant, but would, quite probably, provide a windfall to the landlord, an outcome which runs contrary to the purposes of the Sound Housing Act in particular, and the rent control laws in general. As a result, I would find that Supreme Court properly remitted the matter to DHCR for consideration of the ramifications of Ms. Bloedow's death on the owner's application (Administrative Code § 26-411 [a] [2]) and, therefore, would vote to affirm.

SAXE and MARLOW, JJ., concur with TOM, J.P.; ANDRIAS and NARDELLI, JJ., dissent in a separate opinion by NARDELLI, J.

Judgment (denominated an order), Supreme Court, New York County, entered October 17, 2002, reversed, on the law, without costs, and the petition dismissed.